# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 12, 2013

Lyle W. Cayce
Clerk

No. 12-20544

BRYAN SHIRLEY

Plaintiff-Appellant,

v.

PRECISION CASTPARTS CORP.,
WYMAN-GORDON FORGINGS, L.P.,
WYMAN-GORDON COMPANY, and
WYMAN-GORDON FORGINGS, INC.

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, DENNIS, and OWEN, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Bryan Shirley appeals the district court's summary judgment that dismissed his claims against Precision Castparts Corp., Wyman-Gordon Forgings, Inc., and Wyman-Gordon Forgings, L.P.[1] (collectively, "Defendants") under the Americans with Disabilities Act ("ADA") and the Family Medical Leave Act ("FMLA"). We affirm.

---

[1] Wyman-Gordon Company is not an active entity and never was served in this case.

No. 12-20544

## I.  FACTS AND PROCEEDING

### A.    Facts

For twelve years, Shirley worked for Wyman-Gordon Forgings, L.P. ("W-G") as an operator of the largest extrusion press in the world.  Although he had taken Vicodin as prescribed by his doctor for a long time to manage the pain from various work-related injuries, Shirley began visiting physicians at other pain clinics to collect additional prescriptions for the same drug.  He did not inform those physicians of his other prescriptions.

Under W-G's drug-free workplace policy, any employee who develops a problem with drugs or alcohol may confidentially inform the company's human resources ("HR") manager to pursue treatment.  Under that policy, however, an employee "who rejects treatment or who leaves a treatment program prior to being properly discharged will be terminated."

Following a near overdose in November 2009, Shirley requested medical leave from W-G.  Its HR representative, Alan Barnett, granted the requested leave so that Shirley could be treated for the addiction.  On December 3, with the blessing of his employer, Shirley checked into Memorial Hermann Prevention and Recovery Center in Houston to begin such treatment.

Treatment for drug addiction involves two distinct, sequential components. In the first step, the patient must detoxify, cleansing his body of the drug.  In the second step, the patient must undergo treatment that addresses the addiction by helping him curb his need for the drug.

On December 5, after successfully detoxifying, Shirley requested that he be discharged, albeit against the recommendation of his treating physician at Memorial Hermann, Dr. Mike Leath.  Shirley felt overly confined by the program and resisted efforts to substitute a non-opiate pain reliever for the Vicodin. Believing him to be in denial about his addiction and his dim prospects for recovery without inpatient treatment, Dr. Leath described Shirley's discharge

2

prognosis as "guarded" and provided him with a discharge plan under which he was to obtain treatment from his primary care physician, Dr. David Hoefer.

On December 9, Shirley visited Dr. Hoefer, who released him to return to work. On his return, HR representative Barnett informed Shirley that his early departure from Memorial Hermann was grounds for termination under W-G's drug-free workplace policy; however, Barnett permitted Shirley to reenter Memorial Hermann to complete his treatment. He was advised that he would be welcomed back to work if he successfully completed his course of treatment at Memorial Hermann.

Shirley accepted W-G's offer of a second chance and admitted himself to Memorial Hermann's residential program on December 11. He tested positive for hydrocodone on readmission, and he admits that he had taken Vicodin following his initial discharge days earlier, but—he insists—only in prescribed doses. After only one day of detox, Shirley again checked himself out of the Memorial Hermann program. This time, Dr. Leath's discharge note stated that Shirley had completed detox, but had not completed treatment. On December 14, W-G fired Shirley for twice failing to complete the Memorial Hermann treatment program.

## B.    Procedural History

Shirley sued the Defendants in district court, alleging that W-G violated the ADA and FMLA when it fired him. The Defendants filed a summary judgment motion addressing both claims, which the court granted. It held that (1) the ADA's exclusion of current drug users applied to Shirley, and he was not otherwise protected by the Act's safe harbor provision, and (2) the FMLA did not protect him from termination following his violation of W-G's drug-free workplace policy. Shirley timely filed a notice of appeal.

No. 12-20544

## II. ANALYSIS

### A.    ADA Claim

The ADA prohibits employers from discriminating against a "qualified individual on the basis of disability."[2]  A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[3]  Section 12114(a) of the ADA expressly excludes from the class of "qualified individuals" any employee "who is currently engaging in the illegal use of drugs" at the time that the employer makes an employment decision "on the basis of such use."[4]  This exclusion applies not just to the use of illegal street drugs, but also to the illegal misuse of pain-killing drugs controlled by prescription.[5]

The ADA contains a safe harbor provision in Section 12114(b), which makes the drug-use exclusion inapplicable to an otherwise qualified individual who

(1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;

(2) is participating in a supervised rehabilitation program and is no longer engaging in such use; or

(3) is erroneously regarded as engaging in such use, but is not engaging in such use[.][6]

---

[2]  42 U.S.C. § 12112(a).

[3]  42 U.S.C. § 12111(8).

[4]  42 U.S.C. § 12114(a).

[5]  *See* 42 U.S.C. § 12111(6); 29 C.F.R. § 1630.3; *see also Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 611 n.12 (10th Cir. 1998).

[6]  42 U.S.C. § 12114(b).

No. 12-20544

Notwithstanding this safe harbor exception to the ADA's drug-use exclusion, an employer may "adopt or administer reasonable policies or procedures . . . designed to ensure that an individual described in paragraph (1) or (2) is no longer engaging in the illegal use of drugs."[7]

To make out a *prima facie* case, Shirley had to show, *inter alia*, that he was a qualified individual within the intendment of the ADA.[8] He challenges the district court's conclusion that he failed to bear this burden, asserting that the court erred both in applying the statutory exclusion to him and in holding that he was ineligible for the safe harbor.

### 1. Section 12114(a)

Although Section 12114(a) excludes from the ADA's protection only those individuals "*currently engaging* in the illegal use of drugs," the term "currently" includes drug use "sufficiently recent to justify the employer's reasonable belief that the drug abuse remained an ongoing problem."[9]  The district court recognized, in accordance with precedents of this[10] and other circuit courts,[11] that an individual who has used illegal drugs in the weeks (or even months) preceding the adverse employment action may be deemed "currently engaging" in that use.  In his opening brief on appeal, Shirley does not challenge the

---

[7] *Id.*

[8] *See, e.g., Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.*, 242 F.3d 610, 613 (5th Cir. 2001).

[9] *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 856 (5th Cir. 1999).

[10] *See id.*

[11] *See* 9-153 LARSON ON EMPLOYMENT DISCRIMINATION § 153.11 (2013) (collecting cases and noting that "courts have tended to define current drug use broadly, allowing drug use within days, weeks, or even months of the adverse action to be considered current").

district court's conclusion that he was a "current" user at the time in question within the intendment of Section 12114(a).[12]

Shirley nevertheless contends that, current user or otherwise, he is not excluded from ADA coverage by Section 12114(a) because that section applies only when the employer takes the adverse employment action "on the basis of [the employee's drug] use." Shirley asserts that the reason he was fired was his failure to complete the treatment program at Memorial Hermann, which reason, he insists, was distinct from his *use* of illegal drugs and therefore not "on the basis" of that use. His logic is flawed beyond cavil: W-G required Shirley to complete the drug treatment program only because of his admitted drug problem, and he was fired after he failed to complete that program, not once but twice.[13] Just as importantly, Shirley's argument is self-defeating: A *prima facie* case under the ADA requires a plaintiff to show that he (1) has a disability; (2) was qualified for the job; and (3) *was subject to an adverse employment decision because of his disability.*[14] If Shirley was not fired "on the basis" of his drug use, then he was not fired "because of" his addiction, and his ADA claim must fail.

### 2. Section 12114(b)

Failing to escape the conclusion that he was "currently engaging" in illegal drug use and was fired "on the basis of such use," Shirley contends, in the

---

[12] To the extent that Shirley challenges the court's conclusion in his reply brief, the argument is waived—and it is without merit anyway.

[13] That the exclusion applies only when the employer "acts on the basis of such use" reflects Congress's intent to provide ADA protection for current drug users who suffer adverse employment actions because of *other* disabilities that are unrelated to their drug use. *See id.; see also* Remarks of Sen. Kennedy, 135 Cong. Rec. S10,775 (daily ed. Sept. 7, 1989) ("If an individual who uses or is addicted to illegal drugs also has a different disability, and is subjected to discrimination because of that particular disability, that individual remains fully protected under the ADA.").

[14] *Dupre*, 242 F.3d at 613.

alternative, that he qualifies for the safe harbor under Section 12114(b) because he was "participating in a supervised rehabilitation program and [was] no longer engaging in [illegal drug] use" at the time he was fired. He reasons that the district court "mixed up the standard for falling into the disqualifying provision of 42 U.S.C. § 12114(a) and the standard for obtaining the protection of the safe harbor provision of 42 U.S.C. § 12114(b)" when it concluded that he was not entitled to the safe harbor after only eleven days free from illegal drug use.

Again, the district court was correct. As we noted in *Zenor v. El Paso Healthcare Sys., Ltd.*, "the mere fact that an employee has entered a rehabilitation program does not automatically bring that employee within the safe harbor's protection."[15] Instead, Section 12114(b) "applies only to individuals who have been drug-free for a significant period of time."[16] Rather than providing cover for current users in rehab, the safe harbor provision reflects Congress's recognition that "many people continue to participate in drug treatment programs *long after* they have stopped using drugs illegally, and that such persons should be protected under the Act."[17] Neither does the analysis change based on Shirley's candor with his employer about his addiction: Self-reporting "does not propel [a plaintiff] into the safe harbor's protection simply because he had entered a rehabilitation program before the adverse employment action was taken."[18] To the contrary, a "significant period of recovery" is required for an employee to qualify for the safe harbor, regardless of how his

---

[15] *Zenor*, 176 F.3d at 857.

[16] *Id.* (citing H.R. Rep. No. 101-596, at 64 (1990) (Conf. Rep.)).

[17] H.R. Rep. No. 101-596, at 64 (emphasis added); *see also Zenor*, 176 F.3d at 857 (discussing Congress's intent in adding safe harbor provision); *Shafer v. Preston Mem. Hosp. Corp.*, 107 F.3d 274, 280 (4th Cir. 1997) (same).

[18] *Zenor*, 176 F.3d at 858.

addiction is discovered.[19] This principle accords with decisions of other circuits[20] and faithfully applies Congress's intent when it wrote the safe harbor protection into the law.[21]

Ultimately, courts must determine eligibility for safe harbor "on a case-by-case basis," asking whether "the circumstances of the plaintiff's drug use and recovery justify a reasonable belief that drug use is no longer a problem."[22] As the district court noted, Shirley's refusal to complete an inpatient treatment program, his insistence that he remain on an opiate pain reliever, and his continued use of Vicodin following detox "support[ed] a reasonable belief that continued drug use was still an on-going problem at the time [W-G] terminated his employment." Shirley fails to rebut any of the evidence proffered by his employer and does not otherwise offer evidence of his own sufficient to raise a

---

[19] *Id.*

[20] *See, e.g., Mauerhan v. Wagner Corp.*, 649 F.3d 1180, 1087 (10th Cir. 2011) ("[A]lthough participating in or completing a drug treatment program will bring an individual closer to qualifying for the safe harbor, an individual must also be no longer engaging in drug use for a sufficient period of time that the drug use is no longer an ongoing problem."); *Shafer*, 107 F.3d at 279 ("Congress intended to exclude from statutory protection an employee who illegally uses drugs during the weeks and months prior to her discharge, even if the employee is participating in a drug rehabilitation program and is drug-free on the day she is fired.").

[21] *See* H.R. Rep. No. 101-596, at 69 (noting that the safe harbor provision "does not permit persons to invoke the Act's protection simply by showing that they are participating in a drug treatment program. Rather, refraining from illegal use of drugs is also essential[, and e]mployers are entitled to seek reasonable assurances that no illegal use of drugs is occurring or has occurred recently enough so that continuing use is a real and ongoing problem").

[22] *Mauerhan*, 649 F.3d at 1188.

jury question.[23]  As he did not establish the existence of a genuine dispute of material fact, summary judgment was appropriate.[24]

## B.    FMLA Claim

Shirley also claims that his firing violated his rights under the FMLA. The statute guarantees eligible employees up to twelve weeks of leave during any twelve-month period to attend to various family and medical issues.[25]  The FMLA contains both *pre*scriptive provisions that create a series of entitlements or substantive rights and *pro*scriptive provisions that protect employees from retaliation or discrimination based on their exercise of those rights.[26]  Shirley's claimed right to return to work after his qualified absence[27] is a substantive right within the first category.[28]

That right is not unlimited, however: An employee is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the

---

[23] Contrary to Shirley's contention, courts frequently rule that claimants are ineligible for safe harbor as a matter of law.  *See, e.g., Zenor*, 176 F.3d at 861; *Mauerhan*, 649 F.3d at 1189; *Brown v. Lucky Stores*, 246 F.3d 1182, 1189 (9th Cir. 2001); *Shafer*, 107 F.3d at 281.

[24] *Cf. Zenor*, 176 F.3d at 861 (affirming district court's judgment as a matter of law against plaintiff who had been drug-free for five weeks, had completed the residential portion of his treatment program, and had self-reported his addiction to his employer).

[25] *See* 29 U.S.C. § 2612(a)(1).

[26] *Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 580 (5th Cir. 2006); *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004); *Bocalbos v. National W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998).

[27] *See* 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.214(a).

[28] *Mauder*, 446 F.3d at 580; *see also McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 334 (5th Cir. 2008) ("An employer's failure to restore an employee to the same or equivalent position gives rise to an entitlement claim under 29 U.S.C. § 2615(a)(1)."); *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 926-927 (5th Cir. 1999) (distinguishing claims alleging a failure to reinstate from claims alleging retaliatory discharge following FMLA leave).

No. 12-20544

leave."[29] Department of Labor regulations place the burden on the employer that is denying reinstatement "to show that an employee would not otherwise have been employed at the time reinstatement is requested."[30]  In applying this regulation, we have reasoned that a plaintiff's right to reinstatement was "extinguished by [the employer's] exercise of [its] prerogative" when it terminated her for "otherwise appropriate" reasons unrelated to her exercise of rights secured by the FMLA.[31] That an employee is not guaranteed an absolute right to reinstatement following a qualified absence is not only "a matter of common sense[,]"[32] but also a principle reflected in this circuit's pattern jury instructions[33] and in the opinions of a significant majority of other circuit courts.[34]

Our opinion in *Nero v. Industrial Molding Corp.*[35] is not to the contrary. There, having accepted that § 2614(a)(3) provides an employee only those rights

---

[29]  29 U.S.C. § 2614(a)(3)(B); *see also* 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement . . . than if the employee had been continuously employed during the FMLA leave period.").

[30]  29 C.F.R. § 825.216(a).

[31]  *See Grubb v. Southwest Airlines*, 296 F. App'x 383, 391 (5th Cir. 2008).

[32]  *Id.*

[33]  FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL) § 11.10.2(B)(8) (2009) ("Plaintiff's exercise of FMLA leave rights does not entitle [him] to greater rights to continued employment or employment benefits than any of [his] fellow employees who did not exercise FMLA leave rights.  Thus, Defendant was not required to . . . restore Plaintiff to the same or an equivalent position if Defendant proves Plaintiff's employment . . . would have ended even if Plaintiff had not exercised [his] FMLA leave rights.").

[34]  *See, e.g., Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 403 (3d Cir. 2007); *Yashenko v. Harrah's NC Casino Co., LLC,* 446 F.3d 541, 547 (4th Cir. 2006); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003); *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 805 (7th Cir. 2001); *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005); *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004); *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010).

[35]  167 F.3d 921 (5th Cir. 1999).

to which he would have been entitled had he not taken leave, we noted that, because reinstatement was an FMLA *entitlement*, "the employee [was] due the benefit if the statutory requirements [were] satisfied, *regardless of the intent of the employer*."[36]  A few district courts have interpreted the italicized phrase as imposing a strict liability standard, requiring employers, in all circumstances, to reinstate employees after returning from FMLA leave.[37]  These courts misread *Nero*.  It is true that an employer may not fail to reinstate an employee following his return from FMLA leave, *but only if the statutory requirements have been satisfied*.  Among those requirements is one dictating that an employee must actually be entitled to the position to which he seeks reinstatement, 29 U.S.C. § 2614(a)(3); and an employer may challenge that entitlement by offering evidence that the employee would have lost his position even had he not taken FMLA leave, 29 C.F.R. § 825.216(a).  Thus, although denying an employee the reinstatement to which he is entitled generally violates the FMLA, denying reinstatement to an employee whose right to restored employment had *already been extinguished*—for legitimate reasons unrelated to his efforts to secure FMLA leave—does not violate the Act.  Although we might have been clearer in *Nero*, we in fact considered the employer's reasons for terminating the employee, which, of course, would have been unnecessary had those reasons been irrelevant.[38]

As a legitimate cause for termination would preclude his FMLA claim, Shirley had to present evidence sufficient to raise a jury question that W-G's stated reason for firing him—violation of its drug-free workplace policy—was

---

[36] *Nero*, 167 F.3d at 927.

[37] *See Matamoros v. Ysleta Indep. Sch. Dist.*, No. 3:11-CV-203, 2012 WL 6800505, at *5-6 (W.D. Tex. Feb. 9, 2012); *Shepard v. Tyson Foods, Inc.*, No. 9:06-CV-84, 2007 WL 1127408, at *2 (E.D. Tex. Apr. 16, 2007).

[38] *See Nero*, 167 F.3d at 926.

pretextual. He suggests that W-G misapplied the policy provision that subjects to termination any employee "who rejects treatment or who leaves a treatment program prior to being properly discharged," thereby raising the specter of pretext. Shirley would have us parse the policy's language and conclude that he did not actually leave the "treatment program" early because he never began the second step, *i.e.*, "treatment," of Memorial Hermann's two-step program in the first place, having begun only the first, or "detox," step. He insists that the "treatment" was always contemplated to be with his primary care doctor. W-G counters that "treatment program" refers to the *entire* program—both the detox step and the post-detox treatment step—and that Shirley violated W-G's policy when he began but did not complete the treatment program at Memorial Hermann.

W-G is correct, so Shirley's claim is unavailing. He initially discharged himself from Memorial Hermann against the advice of his treating physician there, returned to work with a clearance from his primary care physician only, and was timely advised by W-G that his premature departure from Memorial Hermann rendered him subject to termination. Yet he was gratuitously given another chance! He was directed to admit himself a second time and complete the treatment regimen. Readmit himself he did, but finish treatment he did not: Shirley checked himself out after only a single day in the "residential program," insisting that outpatient treatment with his personal physician was all that he required. Only then was he fired for violating the company's drug-free workplace policy.

To suppose, then, that Shirley was denied a right to which he was entitled strains credulity to the breaking point. Even after W-G clarified any ambiguity in its policy and gave Shirley a second chance to comply, he failed—refused!—to do so. W-G's interpretation of its policy is *probably* the correct one; it is *certainly* not so unreasonable as to invite any inference of pretext in the reason it gave for

Shirley's termination.     Shirley has offered no evidence of discriminatory application of W-G's drug-free workplace policy,[39] of hostility toward Shirley's decision to take medical leave,[40] or of his employer's reluctance to abide more generally by the FMLA's dictates.  His allegations and evidence are insufficient to survive summary judgment on his FMLA claim, as no reasonable jury could find that he was denied reinstatement for any reason other than his refusal to *continue* his FMLA leave period for the express purpose for which it was taken, *viz.*, completing his drug dependency treatment at Memorial Hermann.

### III.  CONCLUSION

We affirm the judgment of the district court for essentially the reasons set forth in its fulsome opinion and as explained above.

AFFIRMED.

---

[39] *See* 29 C.F.R. § 825.119(b) ("[I]f the employer has an established policy, applied in a non-discriminatory manner that has been communicated to all employees, that provides under certain circumstances an employee may be terminated for substance abuse, pursuant to that policy the employee may be terminated whether or not the employee is presently taking FMLA leave.").

[40] *Cf. Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 335 (5th Cir. 2005).