# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 19-30525

————

United States Court of Appeals
Fifth Circuit

**FILED**
March 30, 2020

Lyle W. Cayce
Clerk

LEAH MICHELLE AMEDEE,

Plaintiff–Appellant,

versus

SHELL CHEMICAL, L.P., Geismar Plant,

Defendant–Appellee.

————

Appeal from the United States District Court
for the Middle District of Louisiana

————

Before SMITH, HO, and OLDHAM, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

The day after Shell Chemical, L.P. ("Shell"), formally disciplined Leah Amedee for violating its attendance policy—and warned her that additional violations could result in termination—she missed her scheduled shift. Why? Because she drove drunk in the middle of the night, wrecked her truck, and got arrested. Amedee never returned to work. Instead, she applied for Family and Medical Leave Act ("FMLA") leave. After a brief investigation—and while

No. 19-30525

Amedee was still on leave—Shell fired her.

Amedee sued Shell for (1) interfering with her FMLA rights by terminating her while she was on leave, (2) failing to restore her to an equivalent position following FMLA leave, (3) discriminating against her on the basis of her disability in violation of the Americans with Disabilities Act ("ADA"), and (4) failing to make reasonable ADA accommodations. After the close of discovery, Shell moved for summary judgment, which the court granted. We affirm.

I.

Amedee worked as a process technician for Shell from 2012 until her termination in 2016. She was subject to Shell's attendance policy, which requires that employees "be at work on time; make every reasonable effort to minimize the amount of time away from work; notify your immediate supervisor promptly when not able to be at work as scheduled; and comply with the medical documentation/notification requirements set forth within the policy." Formal violations—dubbed "chargeable offenses" or "occurrences"—"include absences that do not qualify for FMLA leave or are otherwise unexcused, and an employee's failure to properly notify the supervisor that he/she is going to miss all or part of his/her shift."

Shell employees are subject to three successive levels of formal discipline after they exceed two offenses in a rolling twelve-month period and receive a counseling session. In ascending order, discipline includes an oral reminder documented in writing, a written reminder, and decision-making leave.

According to Shell, between February 22, 2015, and February 29, 2016, Amedee was absent from work without FMLA approval, failed to report that she was off work properly, or was significantly late for her shift at least nine

No. 19-30525

times.[1] In July 2015, Amedee received an oral reminder when she didn't show up for her shift without informing her supervisor. That reminder was memorialized in writing, which cautioned that "[a]ny further incident or job-related problems could result in further disciplinary actions up to and including termination of your employment." Amedee signed to acknowledge that she received and understood that warning.

On September 29, 2015, after Amedee incurred an additional non-FMLA-approved absence, her supervisors issued her the next level of formal discipline, a written reminder. Amedee objected that the FMLA should have covered some of her absences and that she needed to resolve issues with her medical certifications. Her supervisors deferred the written reminder to give her time to contact her doctors and the Reed Group to correct any errors.[2]

In February 2016, after additional occurrences, Amedee's supervisors contacted the Reed Group to determine whether she had submitted paperwork to convert prior occurrences to protected FMLA leave. At that point, Amedee had still not corrected any of the purported deficiencies in her paperwork, and the Reed Group did not approve the previously identified absences as FMLA-qualifying leave.

As a result, on March 10, Shell issued Amedee the written reminder in a

---

[1] February 22, 2015; April 8, 2015; June 22, 2015; July 16, 2015; September 4, 2015; November 9, 2015; February 10, 2016; February 22, 2016; and February 29, 2016. Amedee disputes some of those dates. For example, she claims that she missed work on November 9, 2015, and left work early on July 16, 2015, for medical appointments that should have been classified as "non-FMLA Occupational Health Issue[s]." Shell retorts that Amedee has not directed the court to any admissible evidence to support her arguments.

On the other hand, Shell concedes that Amedee's April 8, 2015, absence was later recorded as a personal day without pay. Amedee missed work that day after getting jailed in the middle of the night on charges of careless operation and DWI.

[2] Shell uses the Reed Group, a third-party administrator, to process requests for FMLA leave.

3

disciplinary meeting with her supervisors and a human resources representative. That reminder, which Amedee signed, identified her attendance violations and provided guidance for her conduct moving forward. It also explicitly warned once again that "[a]ny further lack of adherence to the Attendance Policy could result in further disciplinary actions up to and including termination of your employment."

That night, Amedee drove drunk and wrecked her truck. She called the supervisor on duty, Harlan Hart, a few hours before her 4 a.m. shift, and informed him that she crashed her truck and might not make it to work. After hanging up, Hart drafted an email transcribing the call. In that email, Hart also wrote, "I personally think Leah was drunk and if she shows up at 4am she should be evaluated before she is allowed to work." Not long after the call, Amedee was arrested for a DWI. She didn't make it to work.

Amedee never returned to Shell. A few days after missing her shift, she applied to the Reed Group for FMLA leave for anxiety. She did not, however, request FMLA approval for her March 11 absence.

After a brief investigation into Amedee's absence, Shell management decided to terminate Amedee. The company could not reach her by phone, so it mailed her termination letters on March 30 and April 8.

Amedee sued Shell for (1) failing to restore her to an equivalent position following FMLA leave under 29 U.S.C. § 2615(a)(1); (2) interfering with her FMLA rights by terminating her while she was on FMLA-protected leave under 29 U.S.C. § 2615(a)(2); (3) terminating her because of her disability under 42 U.S.C. § 12112(a) of the ADA; and (4) failing to make reasonable accommodations and denying employment opportunities on the basis of a disability under § 12112(b)(5). Following the close of discovery, Shell moved for summary judgment on all claims, which the court granted.

No. 19-30525

II.

The FMLA provides two distinct protections for employees, one proscriptive and one prescriptive.[3]   The proscriptive provision protects employees from retaliation or discrimination for exercising their FMLA rights.  *Haley*, 391 F.3d at 649.  "Claims for violations of [those] rights are brought under 29 U.S.C. § 2615(a)(2)." *Id.*

The "prescriptive provisions,' by contrast, "create a series of entitlements or substantive rights." *Shirley*, 726 F.3d at 681.  *See Mauder*, 446 F.3d at 580. Under the FMLA, eligible employees may take up to twelve weeks of leave in a twelve-month period to attend to various family and medical issues. 29 U.S.C. § 2612(a)(1).  Upon an employee's return from a qualified leave, employers must restore the employee to either "the position of employment held by the employee when the leave commenced" or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id.* § 2614(a)(1).  Claims for failure to restore are also known as "entitlement claims" and are brought under § 2615(a)(1).  *See, e.g.*, *McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 334 (5th Cir. 2008) (per curiam).

A.

Retaliation claims for exercising FMLA rights are subject to the *McDonnell Douglas* burden-shifting framework.  To make a *prima facie* case of retaliatory discharge, the employee must show that "(1) he engaged in a protected activity, (2) the employer discharged him, and (3) there is a causal link between the protected activity and the discharge."[4]   "Once an employee

---

[3] *See, e.g.*, *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 681 (5th Cir. 2013); *Mauder v. Metro. Transit Auth. of Harris Cty.*, 446 F.3d 574, 580 (5th Cir. 2006); *Haley v. All. Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004).

[4] *Tatum v. S. Co. Servs.*, 930 F.3d 709, 713 (5th Cir. 2019) (alterations omitted) (quoting *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005)).  At the

propounds a *prima facie* case of interference or retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Richardson*, 434 F.3d at 332. "Thereafter, 'the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination." *Tatum*, 930 F.3d at 332–33.

Amedee ignores Shell's proffered justification for termination and contends that "[i]n the absence of a legitimate reason for termination, Plaintiff's FMLA interference claims survive." As discussed above, the day after Amedee's supervisors warned her that she could be fired if she violated the attendance policy, she did so. "[A]s should go without saying, an employee's failure to show up for work is a legitimate reason for firing her." *Trautman v. Time Warner Cable Tex., L.L.C.*, 756 F. App'x 421, 428 (5th Cir. 2018) (per curiam) (collecting cases). That Amedee missed work because she was incarcerated for her second DWI within a year further legitimizes Shell's justification.

Amedee also contends that she has "provide[d] the reasonable factfinder with evidence that none of the predicate 'occurrences' was justified." But to establish her claim, Amedee must demonstrate not just that Shell fired her based on justified absences, but also that Shell's error was a pretext for discrimination.[5] Amedee has not produced evidence that Shell's justification was pretextual. Additionally, Amedee was provided an opportunity to correct her medical certifications and obtain FMLA approval for the disputed absences,

---

district court, Amedee asserted that the mixed-motives framework applied. On appeal, however, she does not reference mixed motives, so any argument under that framework is waived. *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010).

[5] *See Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("[E]vidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision. Management does not have to make proper decisions, only non-discriminatory ones.").

No. 19-30525

but she failed to do so.

Finally, although her brief lacks any legal analysis on the point, Amedee seems to contend that she produced evidence that Shell's justification was pretextual by alleging that her second-tier supervisor Rick Guba had "an aversion to workers being out sick" and therefore initiated a campaign "to ensure her termination." Even if admissible, none of the evidence Amedee provides suggests that Guba took any discriminatory actions toward her. Nor does she produce any evidence that Guba was involved in Shell's decision to terminate her. On the contrary, Shell produced evidence that Guba was *not* involved. Shell's Human Resources Account Manager listed the eight people—including himself—who were involved in the decision to terminate; Guba was not one of them. Guba also testified that he was not involved.[6]

## B.

Amedee avers that Shell violated the FMLA by failing to restore her to an equivalent position at the end of her leave. But an employee's right to return to work after a qualified absence is not unlimited.[7] Instead, "an employee

---

[6] Amedee asserts that the court abused its discretion by excluding several documents as unauthenticated. The court also excluded several documents as hearsay, but Amedee doesn't contend that that ruling was erroneous on appeal, so that argument is now waived. *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993). Amedee offers no support or legal authority for her contention that the court erred in excluding documents for lack of authentication. Moreover, even if the court did abuse its discretion, its error wouldn't affect the result and is therefore harmless. *See United States v. Ragsdale*, 426 F.3d 765, 774–75 (5th Cir. 2005) ("If this court finds an abuse of discretion in admitting or excluding evidence, this court will review the error under the harmless error doctrine, affirming the judgment, unless the ruling affected substantial rights of the complaining party." (quotation marks omitted)).

[7] *See, e.g.*, 29 U.S.C. § 2614(a)(3) ("Nothing in this section shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."); 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement . . . than if the employee had been continuously employed during the FMLA leave period."); *Shirley*, 726 F.3d at 682 (noting the numerous authorities supporting that view).

must actually be entitled to the position to which he seeks reinstatement." *Shirley*, 726 F.3d at 682. "[A]nd an employer may challenge that entitlement by offering evidence that the employee would have lost his position even had he not taken FMLA leave." *Id.* (citation omitted).

Because Shell produced evidence that Amedee would have been lawfully terminated had she not taken leave, she had no right to return to work. Employees cannot immunize themselves from legitimate termination by taking FMLA leave.

## III.

Like the FMLA retaliation claim, the *McDonnell Douglas* burden-shifting framework applies to Amadee's ADA claims for discriminatory termination. *See Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479 (5th Cir. 2016). Applying that framework, the court held that Amedee failed to make a *prima facie* case because she did not present admissible evidence establishing that she was disabled or that Shell regarded her as disabled.[8] The court also held that even if Amedee had made a *prima facie* case, her argument would still fail for the same reasons her FMLA retaliation claim fails.

On appeal, Amedee asserts that she submitted a *prima facie* case. But even if she is correct, her claim still fails. As discussed above, she failed to demonstrate that Shell's legitimate, non-discriminatory reason for firing her was pretextual.

---

(cleaned up)).

[8] "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)).

No. 19-30525

IV.

Amedee contends that Shell violated the ADA by failing to provide a reasonable accommodation. She says that she requested a $100 chair that would suit her better for the sedentary position she began in January 2015. According to Amedee, Shell terminated her instead of ordering the chair.

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A). "Thus, a plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

The district court held that Amedee "has not made a showing that she is disabled or regarded as disabled." Accordingly, Shell "is not obligated to reasonably accommodate Plaintiff's purported physical impairment." Amedee claims that the court erred because it (1) dismissed the claim *sua sponte* and (2) ignored Amedee's evidence that Shell regarded her as having a disability.

As the district court noted, Shell's "motion for summary judgment d[id] not move for dismissal of or in any way address [Amedee's] claim for failure to make a reasonable accommodation under the ADA." Amedee nevertheless addressed that issue in her responsive briefing at the district court, in which she set forth the standard and applicable elements of a failure to accommodate

No. 19-30525

claim in two brief paragraphs. Shell then countered in its reply.

District courts may grant summary judgment *sua sponte* if the party opposing summary judgment has notice. *Delaval*, 824 F.3d at 481. "Where a district court fails to provide notice, the error is considered harmless if the party opposed has no additional evidence anyway or if the appellate court evaluates all of the additional evidence and finds no genuine issue of material fact." *Id.* (cleaned up). As with the plaintiff in *Delaval*, Amedee "did not file a motion for reconsideration below, nor has [s]he described in briefing on appeal any additional evidence that should have been considered by the district court or explained why additional discovery was necessary." *Id.* The district court's failure to provide notice is therefore harmless.

Amedee asserts that because Shell regarded her as disabled, the court erred in concluding that she hadn't established a *prima facie* case. That argument is misguided: Whether Rick Guba—or anyone at Shell, for that matter—regarded Amedee as disabled is irrelevant. To establish a failure-to-accommodate claim, Amedee must demonstrate that she had a disability, not just that she was regarded as disabled.[9] As Shell correctly points out, at no point in her disjointed brief does Amedee contend that she was *actually* disabled.

AFFIRMED.

---

[9] *See* 29 C.F.R. § 1630.2(o)(4) ("A covered entity is required, absent undue hardship, to provide a reasonable accommodation to an otherwise qualified individual who meets the definition of disability under the 'actual disability' prong . . . , but is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the 'regarded as' prong . . . ."); *Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 280 (5th Cir. 1998) ("[A]n employer need not provide reasonable accommodation to an employee who does not suffer from a substantially limiting impairment merely because the employer thinks the employee has such an impairment.").