# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 10, 2021

Lyle W. Cayce
Clerk

No. 20-40782

Raquel I. Villarreal,

*Plaintiff—Appellant*,

*versus*

Tropical Texas Behavioral Health,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:19-cv-53

Before Davis, Haynes, and Oldham, *Circuit Judges*.

Per Curiam:*

Tropical Texas Behavioral Health fired Raquel Villarreal after she missed a substantial amount of work without leave. Villarreal sued under the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"). The district court granted summary judgment to Tropical Texas. We affirm.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-40782

I.

Raquel Villarreal is a single mother to a special-needs daughter who suffers from several illnesses. Tropical Texas hired Villarreal in April 2016, as a program specialist. Shortly after being hired, Villarreal requested time off to attend her daughter's medical appointments. Tropical Texas exempted Villarreal from a company policy prohibiting absences within the first 3 months and granted her request. Within a year, Villarreal applied for a promotion to a program supervisor position for which she was eventually approved.

In March 2017, Villarreal received a coaching plan from her supervisor. The plan highlighted productivity issues and documented Villarreal's failure to meet the company's targeted number of treatment hours. The coaching plan noted an expectation that Villarreal would work more efficiently to achieve company goals. Villarreal disagreed with the coaching plan, so she did not sign it.

Beginning in April 2017, Villarreal requested—and Tropical Texas approved—intermittent FMLA leave so that Villarreal could care for her daughter's medical condition. Again in July, Villarreal requested time off work to tend to her ailing daughter. Tropical Texas approved Villarreal's requests and permitted her to cover her absences with FMLA leave in addition to paid time off and leave without pay.

Villarreal's productivity issues remained. In October, Villarreal received a quarterly evaluation and coaching plan warning her that if she failed "to make drastic improvements regarding her performance deficiencies within the next month" she could be subject to "further disciplinary action up to termination." The wide-ranging coaching plan described Villarreal as a problematic employee who didn't "foster a harmonious work environment . . . as evidenced by multiple complaints from

staff and clients." The plan went on to explain that "Villarreal has not been able to develop an active caseload to provide CBT counseling sessions in a consistent manner." And it further highlighted Villarreal's poor attendance record as evidenced by her low PTO balance. To rectify the relevant performance issues, Villarreal promised to "make every attempt to pre-schedule absences and provide dependable coverage and service." Villarreal disagreed with some issues raised in the coaching plan, but she testified that her poor performance and attendance could be corrected, and recognized that her consistently low PTO balance was problematic.

The program supervisor position proved too intensive, and Villarreal had difficulty fulfilling her responsibilities as a program supervisor, so in November she requested a transfer to her original position as a program specialist. The company obliged. The next month Villarreal was diagnosed with a medical condition for which her doctor recommended surgery. Villarreal requested FMLA leave for the surgery and recovery. Upon hearing the request, Villarreal's supervisor asked if the surgery could be postponed by a few weeks because the department needed staff. Villarreal consulted with her doctor and confirmed that the surgery could be postponed to January 2018.

Tropical Texas then approved Villarreal's FMLA leave, and she took 222.5 hours of approved leave between January 4 and February 12, 2018, to recuperate after her surgery. Thereafter, Villarreal returned to the office, but inconsistently—she continued to miss work for doctors' appointments and other obligations.

Meanwhile, Villarreal's daughter's health declined. In April, it was determined that Villarreal's daughter required open-heart surgery. This news sent Villarreal into emotional distress and caused her to miss 4 days of work. Between March 1 and June 19, Villarreal requested and had approved

another 144.75 hours of FMLA leave. In June, Villarreal was diagnosed with clinical depression, and informed Tropical Texas that she would take 79.25 additional FMLA hours between June 25 and July 9 to care for herself. On June 27, Villarreal provided the company with a doctor's note describing her depression diagnosis and explaining that her illness posed "no limit" to the "job activities . . . she can perform."

On July 9, a Tropical Texas human resources director informed Villarreal's supervisor that Villarreal's FMLA leave would expire on July 10. Villarreal's supervisor then informed Villarreal that her leave was expired and that she needed to return to work. Operating under the assumption that her leave did not expire until July 12, Villarreal did not return to work until then.

Upon her return, Villarreal immediately informed her supervisor that "she needed to reduce her work hours and have a flex schedule so that she could care for her daughter's disabilities/serious medical conditions as well as her own." Villarreal requested that her work week be reduced to 30 to 32 hours as an accommodation for her condition and her daughter's recurring health problems. Later that day, Villarreal's supervisor denied her request with an explanation that the company needed employees to perform her job function. Villarreal asked for reconsideration.

Villarreal's unexcused absences continued. She missed work July 13, 17–20, 23–24, and 31. On July 23, a manager informed Villarreal that the company stood by its denial of her reduced-hours-work-week request. On July 25, Villarreal met with a company HR director. The HR director told Villarreal that her absences were a serious problem that affected the basic functioning of the company. Villarreal responded with an explanation that "she and her daughter had serious medical conditions and disabilities." HR director responded that the company had been "more than generous" in

providing Villarreal with time off and with FMLA leave to care for herself and her daughter.

On July 26, Villarreal submitted two proposed flex-schedule alternatives; one proposed a 33-hour work week, the other a 35-hour work week. Each explained the request was "due to medical reasons" but provided no further detail. The HR director forwarded Villarreal's request to management. Management rejected both alternatives because "a reduction of 5 hours and [a modified] schedule [would] negatively impact the program's response time and volume of diagnoses completed via telehealth." The company determined, however, that a "community-based" position could accommodate Villarreal's needs while protecting the integrity of the company's operations.

On July 31, two management officials met with Villarreal to discuss these accommodations. The company proposed two options. First, they told Villarreal that they could approve her flex schedule request if she could commit to taking no unprotected leave for 3–4 months. Villarreal declined and explained that she could not guarantee her attendance at work given her daughter's (and her own) ongoing health issues. Alternately, the company offered Villarreal a lateral transfer to a "community-based" position in which she would be paid the same salary and permitted to plan her own schedule, which would include visiting patients in the field.

Villarreal declined both options. Notwithstanding Villarreal's failure to provide the company with a doctor's note proscribing driving (or otherwise limiting her ability to work in any way), she claimed the company knew that her anti-depression medication made driving to appointments a non-starter. And she further explained that she preferred to keep her current job and that she was "not ready to move" to a new position. Having failed to secure her preferred schedule accommodation, Villarreal left work for the

No. 20-40782

day. Later that afternoon, Villarreal received an email informing her that she'd been terminated for her excessive absences and her refusal to accept the alternatives offered by the company.

Villarreal filed a complaint with the Equal Employment Opportunity Commission on November 1, claiming the company fired her on account of "her disabilities, serious medical conditions, her request for accommodation and FMLA leave, and her discrimination complaints and desire to file a grievance." And she then filed suit in the district court. The district court granted summary judgment in favor of Tropical Texas on all claims. This appeal followed.[1]

## II.

Review of a district court's grant of summary judgment is de novo. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). "Summary judgment is proper if the moving party shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 864 (5th Cir. 2021) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party" after taking the facts in the light most favorable to it. *Sims v. City of Madisonville*, 894 F.3d 632, 637 (5th Cir. 2018) (per curiam) (quotation omitted).

## A.

First, the FMLA retaliation claim. The FMLA prohibits employers from "discharging[ing] or . . . discriminat[ing] against any individual for

---

[1] On appeal, Villarreal does not contest the district court's entry of summary judgment on her FMLA interference claim. That claim is thus forfeited. *See Norris v. Causey*, 869 F.3d 360, 373, n.10 (5th Cir. 2017).

opposing any practice made unlawful under this subchapter." 29 U.S.C. § 2615(a)(2). To prevail on a claim of retaliation, an employee must show she suffered an adverse employment decision because she took FMLA leave. *See Elsensohn v. St. Tammany Par. Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (per curiam). Retaliation claims for exercising FMLA right are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *See Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). Under that framework, an employee must show that "(1) he engaged in a protected activity, (2) the employer discharged him, and (3) there is a causal link between the protected activity and the discharge." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835 (5th Cir. 2020) (quotation omitted). "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007). Thereafter, "the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Id.* at 388–89.

We don't need to decide whether Villarreal established a prima facie case for retaliation because even if she did, Tropical Texas had a non-pretextual reason for firing her: her unapproved absenteeism. Excessive absenteeism can provide a compelling—if not case ending—justification for terminating an employee. *See Amedee*, 953 F.3d at 835 ("[A]s should go without saying, an employee's failure to show up for work is a legitimate reason for firing her." (quotation omitted)); *Hypes ex rel. Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) (per curiam). Here, Villarreal missed work, continued missing work after the company told her it was a problem, and said she could not commit to coming to work. That easily constitutes a valid basis for firing her.

Confronted with Tropical Texas' legitimate reason for her termination, Villarreal must show by a preponderance of the evidence that

the company's articulated reason for her firing was pretextual. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015). Villarreal "may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quotation omitted). She does neither.

Villarreal first points to the temporal proximity between her return from FMLA leave and her termination. But that's not enough. We have been clear: "Temporal proximity gets [a plaintiff] through [her] prima facie case, but does not, on its own, establish that the company's stated explanation for [her] firing was mere pretext." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019). Instead, "[a]t the pretext stage, the Supreme Court[] . . . requires a showing of but-for causation, which requires more than mere temporal proximity." *Id.* at 243–44 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)); *see Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). Thus, temporal proximity is insufficient.

Next, Villarreal argues that emails between company managers discussing her attendance record provide evidence of retaliation. On July 17, Villarreal's supervisor characterized Villarreal as a troubled employee and expressed suspicion that she abused the company's leave-without-pay system for a trip to Arizona. But this email complained only of Villarreal's *unprotected* absences. It does nothing to suggest anyone at the company was frustrated with (or inclined to retaliate for) her *protected* absences.

Moreover, Tropical Texas has a record of granting Villarreal accommodations whenever she requested and even when the law did not compel them. This factor strongly weighs against an inference of pretext. *See Garcia v. Penske Logistics, L.L.C.*, 631 F. App'x 204, 212 (5th Cir. 2015) (per

8

curiam) (finding employer's past approvals of FMLA leave to be evidence of non-pretextual, non-discriminatory termination). Indeed from the first day of her employment, Tropical Texas granted Villarreal 487.75 hours in FMLA leave, and even permitted her to use PTO and leave without pay to attend to her personal responsibilities. Furthermore, even after Villarreal had exhausted her protected leave and after she missed more than a week of work without excuse, Tropical Texas engaged in negotiations and made two offers to retain Villarreal as an employee. Villarreal dismissed both offers and refused to guarantee consistent attendance at work. It was *only then* that Tropical Texas terminated her employment. Villarreal's FMLA retaliation claim fails as a matter of law.

B.

Next, the ADA claims. Villarreal claims that Tropical Texas (1) committed ADA discrimination by terminating her because she suffers from depression, and (2) violated the ADA by failing to offer a reasonable accommodation. The first ADA claim is governed by the same *McDonnell Douglas* framework that doomed Villarreal's FMLA-retaliation claim. *See Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479 (5th Cir. 2016). So the ADA-discrimination claim fails for the same reasons we gave in the preceding section.

Villarreal's ADA-accommodation claim fails too. A plaintiff in the Fifth Circuit must prove the following elements to prevail on a failure-to-accommodate claim: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known to the employer; and (3) the employer failed to make reasonable accommodations for such known limitations. *See Feist*, 730 F.3d at 452. But the ADA does not protect the right to a preferred accommodation—just a reasonable one. *See Kitchen v. BASF*, 952 F.3d 247, 254 (5th Cir. 2020).

No. 20-40782

Villarreal fails on the first prong. A plaintiff can establish that she is "qualified" by showing "either (1) [she] could perform the essential functions of the job in spite of [her] disability," or "(2) that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job." *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (quotation omitted). However, the inability (or refusal) to attend work disqualifies one from being a "'qualified individual with a disability' under the ADA." *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (quoting 42 U.S.C. § 12111(8)). That is because "[a]n essential element of any . . . job is an ability to appear for work . . . and to complete assigned tasks within a reasonable period of time." *Hypes*, 134 F.3d at 727 (quotation omitted).

AFFIRMED.