# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 16, 2025

Lyle W. Cayce
Clerk

---

No. 24-20269

---

Alisha Strife,

*Plaintiff—Appellant*,

*versus*

Aldine Independent School District,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-358

---

Before Graves, Engelhardt, and Oldham, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:

This appeal concerns disability law violations that Appellant Alisha Strife allegedly suffered while her employer, the Aldine Independent School District ("AISD" or the "district"), evaluated her request to have her service dog accompany her at work. AISD prevailed in the proceedings below: the district court granted the school district's motion to dismiss two of Strife's claims, and granted a motion for summary judgment as to three other disability law violations that Strife alleged.

No. 24-20269

Two points bear emphasis in resolving this case: the accommodation request was approved after a six-month review process, and Strife did not suffer a physical injury during that six-month period. Those facts resolve, and justify affirming, the district court's grant of summary judgment in AISD's favor. As for the dismissed claims, the district court correctly found that Strife failed to allege a hostile work environment claim. But she did plead sufficient facts that could allow a factfinder to conclude that the district unjustifiably delayed, and thus, failed to accommodate, her accommodation request. The district court's contrary conclusion is accordingly reversed, and that sole claim is remanded for further consideration.

## I.

### A.    Factual Background

Appellant Alisha Strife is a 38-year-old mother who resides in Magnolia, Texas. She previously served in the U.S. Army, and was deployed to Kuwait and Iraq in late 2003 in support of Operation Iraqi Freedom. Strife sustained shoulder, leg, and brain injuries during her service, and was later diagnosed with Post-Traumatic Stress Disorder ("PTSD"). She was medically discharged in May 2005.

After discharge, Strife began pursuing a career in the classroom. In 2012, she joined the Aldine Independent School District as a fifth- and sixth-grade teacher. But Strife's disabilities rendered her unable to continue teaching in the classroom, and she shifted to a Testing Coordinator position within the district in 2015. After six years of optimal performance, Strife was promoted to work in AISD's Human Resources department in 2021.

Strife's disabilities progressed post-discharge. In 2017, the U.S. Department of Veterans Affairs ("VA") classified her as:

- 100% disabled from service-related PTSD and depression;
- 20% disabled from a right knee subluxation (partial dislocation);

2

- 10% disabled from right knee joint disease; and
- 10% disabled from a chronic left ankle sprain.

Strife was unable to mitigate her disabilities with alternative treatments. She thus applied for and received a certified service dog nicknamed "Inde." Inde assists Strife with her physical and psychological disabilities by helping her maintain her balance and gait, protecting her from falling, and mitigating acute PTSD symptoms.

On August 30, 2022, Strife submitted a request through the district's human resources portal ("Broadspire") asking that AISD accommodate her disabilities by allowing Inde to accompany her at work. After meeting on September 16, the district's Employee Accommodations Committee ("EAC") determined that it needed additional information "to determine what specific job functions were impacted by [Strife's] disabilities and whether there were alternative accommodations." Strife provided the EAC with a letter signed by her VA treating "provider," Dr. Lisa Miller.[1] In the letter, Dr. Miller confirmed that Inde was "invaluable to [Strife's] mental and physical health recovery."

According to Strife, the EAC deemed Dr. Miller's correspondence insufficient because she was not a board-certified medical doctor. Strife thus provided a letter from Dr. Gurtej Mann, her treating psychiatrist. Dr. Mann's letter—which was nearly word-for-word the exact letter that Dr. Miller sent—again confirmed that Inde was "invaluable to [Strife's] mental and physical health recovery."

---

[1] Dr. Miller is a "Doctor of Pharmacy . . . with a specialization in Psychiatric and Geriatric pharmacology." According to Strife, Dr. Miller is authorized, in accordance with "the VA's protocols," to "diagnose and treat veterans . . . with psychological conditions."

On November 1, 2022, Dr. Mann completed a questionnaire provided by the Broadspire portal immediately after Strife submitted her accommodation request. The questionnaire asked Dr. Mann to specify "any reasonable accommodations . . . that may enable the individual to overcome the functional limitations" described. Dr. Mann responded, "[h]aving support of a service animal."

Ten days after Dr. Mann completed the Broadspire questionnaire, Strife was orally informed that "the next step in [AISD's] interactive review process involve[d] a physician working on behalf of the district performing an examination and reviewing the medical information" that Dr. Mann provided. Strife, frustrated by AISD's apparent stonewalling, sought legal advice. The ordeal culminated in the following exchanges (dates in 2022 unless otherwise specified):

| | |
|---|---|
| August 30 | Strife submits her request for accommodation through the Broadspire portal. |
| November 11 | The organization that issued Strife's service dog certification informs AISD that its insistence on a medical exam constitutes "discrimination under the ADA." |
| November 16 | AISD asks Strife to clarify whether she is "refusing to continue the interactive process to determine whether you can perform the essential functions of [your] job with or without reasonable accommodation." |
| November 18 | Strife's lawyer writes a letter outlining disability law violations. AISD's counsel replies that the district is aware that Strife believes that "a service dog is the sole accommodation," that AISD had the right to "engage in the interactive process to determine the appropriate accommodation," and that the exam was needed to "determine additional accommodations." |

No. 24-20269

| | |
|---|---|
| November 19 | Strife's lawyer asks AISD to provide information about "additional accommodations" that the district was contemplating. |
| December 5 | AISD's counsel responds that the doctor letters that Strife provided were unreliable (they lacked letterheads and had conflicting doctor titles, and Strife admitted that she wrote at least one letter herself), and an exam was needed to "determine what accommodations are reasonable and required." |
| December 23 | AISD schedules a medical exam for Strife. |
| January 6, 2023 | Strife's lawyer provides three letters, including correspondence from two other physicians, confirming limitations and urging that AISD approve the request. |

On January 6, 2023, Strife filed a Charge of Discrimination with the Texas Workforce Commission and Equal Employment Opportunity Commission. She asserted that AISD discriminated against her on the basis of her disability by denying a reasonable accommodation and retaliating against her actions. Four days later, on January 10, Strife underwent a VA-led examination that assessed her physical disabilities. Two doctors separately confirmed that (1) Strife suffered from impairments relating to standing, balance, and gait, and (2) Inde was required "in all settings (including place of employment) to avoid further balance-related injuries."

Strife's attorney transmitted these additional letters to AISD's counsel. The district's counsel replied that the VA's evaluation was lacking because the evaluating doctor's notes were not provided. Strife's attorney provided the examination notes on January 13. AISD then claimed that the supplemental letters were insufficient because they failed to "provide any information regarding potential alternative accommodations."

5

### B.    Procedural History

On February 1, 2023, Strife filed suit in the Southern District of Texas alleging (1) failure to accommodate, (2) hostile work environment, (3) disability discrimination, (4) retaliation, and (5) interference, all in violation of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, and Texas disability laws.[2] She sought a temporary restraining order and preliminary injunction against the district on February 6.

During the TRO hearing, held on February 15, the district court denied Strife's TRO request, but directed the parties to complete the "interactive process" as soon as possible. Six days later, and in response to an email from an AISD attorney, Strife's counsel confirmed "that a walker, cane, and/or wheelchair would not be an effective accommodation of Ms. Strife's physical impairments, as they would be of no benefit if/when she falls." The district granted Strife's request for accommodation two days later.

Strife continued to press her claims, and eventually filed a Second Amended Complaint. AISD moved to dismiss Strife's failure-to-accommodate and hostile work environment claims on November 20, 2023, and (in the alternative) for summary judgment on all claims on January 29, 2024. On June 12, 2024, the district court granted AISD's motion to dismiss Strife's failure-to-accommodate and hostile work environment claims. It also granted AISD's motion for summary judgment as to Strife's disability-based

---

[2] This court analyzes claims brought under the ADA, Rehabilitation Act, and Texas Labor Code coextensively. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (per curiam) ("The RA and ADA are judged under the same legal standards, and the same remedies are available under both Acts."); *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 473–74 (5th Cir. 2006) ("Given the similarity between the ADA and the TCHRA, Texas courts look to analogous federal precedent for guidance when interpreting the Texas Act.") (quotation marks omitted).

discrimination and retaliation claims and her ADA interference claim. Strife timely appealed.

## II.

### A.    Dismissed Claims & Standard of Review

The district court's dismissal of Strife's failure to accommodate and hostile work environment claims is reviewed *de novo*. To avoid dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). All well-pleaded facts in the operative complaint are treated as true, and allegations are construed in the light most favorable to the nonmovant.

### B.    Failure to Accommodate

Strife first alleges that AISD's six-month delay in granting her accommodation constitutes a failure to accommodate her disability. Such claims have three elements: "(1) the plaintiff is a qualified individual with a disability," "(2) the disability and its consequential limitations were known by the covered employer," and "(3) the employer failed to make reasonable accommodations for such known limitations." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020) (internal quotations omitted) (citing *Feist v. La., Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013)). The first two factors are not in dispute. Instead, the parties disagree on the third factor, and specifically, whether AISD's six-month delay in approving Strife's request constitutes a failure to "make reasonable accommodations." *Id.*

The submission of a request for accommodation "triggers the employer's obligation to participate in [an] interactive process" to identify an appropriate accommodation. *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996). "[T]he responsibility for fashioning a reasonable

accommodation is shared between the employee and employer," *id.*, and accordingly, both parties must engage in a constructive, "bilateral discussion" with "good-faith exploration." *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999); *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009) (citation omitted). "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 112 (5th Cir. 2005). And a reciprocal obligation is assumed by the employee; employers are not responsible when a breakdown of the interactive process "is traceable to the employee and not the employer." *Loulseged*, 178 F.3d at 736.

As explained above, AISD granted Strife's request after a six-month interactive process. The question then is whether that six-month delay, in and of itself, constitutes a failure to accommodate. This court "has discussed only in dicta whether delay alone may constitute an ADA violation." *Schilling v. La. Dep't of Transp. & Dev.*, 662 F. App'x 243, 246–47 (5th Cir. 2016), *as revised* (Oct. 5, 2016) (per curiam) (citing *Loulseged*, 178 F.3d at 737 n.6). In a footnote to *Loulseged*, we wrote:

> [In] many employment cases, the employee continues working in a capacity arguably needing accommodation while the interactive process is ongoing. An employer that dragged its feet in that situation could force the employee to work under suboptimal conditions, "simply document the employee's failures," and use the employee's difficulties as an excuse to terminate her. An employer's delaying of the process under those conditions might create liability.

178 F.3d at 737 n.6 (internal citation omitted). This reasoning makes sense: otherwise, an employer could circumvent the ADA's protections by forcing an aggrieved employee to endure an endless interactive process. But, at the same time, disability laws and applicable caselaw do not require "that an

employer must move with maximum speed to complete this process and preempt any possible concerns." *Id.* at 737. Instead, "the employer is entitled to move at whatever pace he chooses so long as the ultimate problem—the employee's performance of her duties—is not truly imminent." *Id.*

Ultimately, Strife's allegations do not merely concern delay; they intimate a lack of good faith from AISD to meaningfully evaluate her request in an appropriate and timely manner. Recall that the third factor of a failure-to-accommodate claim requires that an employer "make reasonable accommodations" for a known disability. *Amedee*, 953 F.3d at 837 (citation omitted). We have accordingly stated—consistent with our sister circuits— that "delay in providing reasonable accommodation may show a lack of good faith in the interactive process." *Schilling*, 662 F. App'x at 246; *see, e.g.*, *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) ("A party that obstructs or delays the interactive process is not acting in good faith."); *Valle-Arce v. Puerto Rico Ports Auth.*, 651 F.3d 190, 200 (1st Cir. 2011) ("unreasonable delay may amount to a failure to provide reasonable accommodations").

The operative complaint pleads sufficient facts to meet this standard. Strife only sought that AISD "allow[] her to have and use a service dog at work," and did not require that the district procure the dog or modify her workplace. And the district's delay in granting that request undoubtedly forced Strife to "work under suboptimal conditions" for those six months. *Loulseged*, 178 F.3d at 737 n.6.

Crucially, Strife alleges that AISD was responsible for that unreasonable delay. According to her telling, the district filibustered because it wanted Strife to undergo an independent medical exam. An exam request is not inherently unreasonable; the EEOC's enforcement guidance suggests

that an independent physical may be necessary "if the individual provides insufficient information . . . to substantiate that s/he has an ADA disability and needs a reasonable accommodation." *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans With Disabilities Act*, 2002 WL 31994335, at *8. But Strife claims that she repeatedly provided AISD with information that confirmed her disabilities and need for accommodation. Based on these allegations, and drawing all rational inferences in Strife's favor, a reasonable factfinder could find that the district's insistence that she undergo an independent medical exam was unreasonable.

Two other allegations bear particular emphasis. Strife claims that the district failed to offer "*any* reasonable accommodations of her disabilities." And the district granted her request only after she initiated litigation, and within weeks of a court-scheduled injunction hearing. A reasonable factfinder could construe those additional allegations as reasons to disbelieve the district's claim that it needed to determine whether alternative accommodations were available.

The district court employed a different, and incorrect, approach to resolving the third *Amedee* factor. It focused on what Strife experienced while AISD considered her request, and concluded that because she (1) failed to allege that she suffered an injury during the six-month period, (2) was disabled prior to requesting her accommodation, and (3) did not experience any changes in the terms and conditions of her employment, her allegations were insufficient to demonstrate that AISD "failed to make reasonable accommodations." But the relevant question is not whether Strife experienced severe injuries while waiting for her accommodation, but whether AISD "failed to make reasonable accommodations" after being informed of Strife's limitations. *Amedee*, 953 F.3d at 837 (citation omitted). And, contrary to the district court's reasoning, this court has concluded that

"reasonable accommodations are not restricted to modifications that enable performance of essential job functions." *Feist*, 730 F.3d at 453; *see also Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 239 (D.C. Cir. 2018) ("A reasonable jury could conclude that forcing [a plaintiff] to work with pain when that pain could be alleviated by his requested accommodation violates the ADA."). Nor does a failure-to-accommodate claim require proof of an adverse employment action. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 703 n.6 (5th Cir. 2014) ("A failure-to-accommodate claim provides a mechanism to combat workplace discrimination even when the employee in question has not suffered adverse employment action.").

At bottom, at the motion-to-dismiss stage, a court's role is to infer, through "the allegations of the complaint as a whole," whether the plaintiff has pled sufficient facts that if true, would entitle him to relief. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011). Strife's allegations as to her failure-to-accommodate claim clear this bar. We accordingly REVERSE the district court's dismissal of Strife's failure to accommodate claim and REMAND to the district court for further proceedings.

## B.    Hostile Work Environment

Next, Strife appeals the dismissal of her hostile work environment claim. Pleading standards require her to sufficiently allege that (1) she belongs to a protected group, (2) was subjected to unwelcome harassment, (3) the harassment was based on her disability, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew, or should have known, about the harassment and failed to take prompt, remedial action. *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470–71 (5th Cir. 2021). The alleged "harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 236 (5th Cir. 2001)

(quotation marks omitted). Stated differently, "[w]hether an environment is hostile or abusive depends on the totality of the circumstances," and factors such as "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance," are considered. *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009)

In her opening brief, Strife claims that the district engaged in a "six-month long campaign of harassment based on its discriminatory animus and retaliation against her for attempting to vindicate her rights to such an accommodation." But the operative complaint only recounts two instances of "harassment": (1) AISD's refusal to immediately grant her accommodation request, and (2) the district's insistence that she undergo an independent medical exam. Even granting all reasonable inferences in Strife's favor, neither instance colorably alleges that the district's engagement in the interactive process was so "pervasive or severe" as to "create an abusive working environment." *Flowers*, 247 F.3d at 236. And more fundamentally, "a disagreement with an employer over terms of employment or an accommodation do[es] not amount to harassment." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 585 (5th Cir. 2020). The district court correctly dismissed Strife's hostile work environment claim.

## III.

### A.    Summary Judgment Claims & Standard of Review

The district court's grant of summary judgment as to Strife's three other claims—disability discrimination, retaliation, and interference—is also reviewed *de novo*. *LHC Grp., Inc.*, 773 F.3d at 694. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A). A genuine material fact dispute exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Rogers v. Bromac Title Servs., LLC*, 755 F.3d 347, 350 (5th Cir. 2014).

### B.   Disability Discrimination

Strife contests the district court's grant of summary judgment as to her disability discrimination claim. This cause of action requires a plaintiff to prove that she (1) "has a disability, or was regarded as disabled," (2) "was qualified for the job," and (3) "was subject to an adverse employment decision" because of her disability. *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017) (citation omitted). An "adverse employment decision" can stem from not only the "hiring, advancement, or discharge of employees," but more minor facets of employment, such as "employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). That said, a plaintiff must plead "not only an adverse action, but something more than a *de minimis* harm borne of that action." *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 431 (5th Cir. 2023) (per curiam).

Strife offers two formulations of this claim. The first—that the district discriminated against her by delaying consideration of her accommodation request—is unsupported by the record. AISD did not literally alter the "terms, conditions, or privileges" of her employment during the six-month interactive process. 42 U.S.C. § 12112(a).[3]   As the

---

[3] Strife references the Supreme Court's recent *Muldrow* decision as support for her argument that AISD altered the terms, conditions, or privileges of her employment. But *Muldrow* concerns *Title VII* discrimination cases, not ADA violations. And its conclusion—that a plaintiff need only show some "change" initiated by an employer (and not a "significant change") to substantiate a discrimination claim—does not undercut the fact that AISD made *no change* to Strife's employment terms. *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024).

district court summarized, Strife "maintained her same role and compensation, received high performance evaluations, and was never reprimanded." Moreover, summary judgment evidence demonstrates that Strife did not suffer any physical injury during this six-month period. For example, while Strife claimed that she accessed her office by climbing a steep set of stairs, she conceded that "about 90% of the time," she used an ADA-compliant ramp to access her office, and on the occasions that she chose to use the stairs, she did not fall or trip. *See Harrison*, 82 F.4th at 431 (requiring more than a *de minimis* injury).

The second formulation—that AISD discriminated against her by insisting she undergo an independent medical exam—is also unfounded. For one, the examination never occurred, as the district withdrew its request and granted Strife's request as soon as her attorneys confirmed that alternative accommodations did not exist. For two, even if the examination occurred, there is no evidence to suggest that it would have affected the "terms, conditions, or privileges" of Strife's employment with the school district. 42 U.S.C. § 12112(a). The district court correctly granted summary judgment on Strife's disability discrimination claim.

## C.    Retaliation

Strife also contends that the district court erred in granting AISD summary judgment as to her retaliation claim. The cause has three elements: "(1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999). If a plaintiff establishes a *prima facie* claim, the burden shifts to the defendant to provide a "legitimate, non-discriminatory reason for the adverse employment action." *Id.* (citation omitted). If the defendant does so, then the plaintiff is tasked with "adduc[ing] sufficient evidence . . . that

the proffered reason is a pretext for retaliation." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). At bottom, the plaintiff must demonstrate that "the adverse employment action would not have occurred 'but for' the protected activity." *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996) (citing *McMillan v. Rust Coll., Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983)).

Strife claims that AISD unlawfully retaliated against her by (1) delaying the granting of her accommodation request for six months, and (2) requesting that she undergo an independent medical exam. These theories subsume within one another, as the independent medical exam was requested as part of the six-month long interactive process. This court has not addressed whether a request for an independent medical exam constitutes "adverse employment action" for a retaliation claim. *Seaman*, 179 F.3d at 301. But the EEOC has noted that "continued efforts by the employer to require that the individual see the employer's health professional could be considered retaliation" if the employee has already provided sufficient documentation of their disability and accommodation needs. *See* U.S. Equal Employment Opportunity Commission, *ADA Enforcement Guidance: Pre-employment Disability-Related Questions and Medical Examinations*, 2005 WL 4899269 (¶ 11 under "Scope and Manner of Disability-Related Inquiries and Medical Examinations").

However, the evidentiary record offers ample support for AISD's assertions that despite Strife's submissions, it still needed an independent medical exam to complete its review. At the time the district made its first exam request, on November 11, 2022, Strife had supplied the district with five pieces of information: (1) certifications that allowed her to own a service animal; (2) letters from the VA that identified her physical and psychological disabilities; (3) a letter from Dr. Miller, her treating pharmacologist, stating that Strife's psychological conditions necessitated a service dog; (4) a letter

from Dr. Mann, her treating psychologist, with nearly-identical contents to Dr. Miller's letter; and (5) the questionnaire that Dr. Mann completed, which stated that a "trained service animal" could help "ground" Strife.

Each of these documents explained that a service dog at Strife's workplace would be beneficial to her physical and psychological health. But none addressed whether any alternative measures, such as a cane, wheelchair, or workplace modifications, could alternatively redress Strife's disabilities. And that missing piece is significant because "[t]he ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." *E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009). AISD accordingly held a legitimate, non-discriminatory reason for insisting that Strife undergo an independent medical exam: to determine whether any alternative accommodations existed. Indeed, as soon as Strife's attorney affirmatively confirmed that no alternative accommodations were sufficient, the district dropped its request for an independent medical exam and approved Inde's presence in the workplace.

The burden then returns to Strife to demonstrate that AISD's rationale was, in reality, a pretext for discrimination. She points to the district's repeated requests for additional documentation, its failure to suggest any alternative accommodations, and request for an exam, as evidence that AISD's rationale was pretextual.[4] But those actions do not evince discrimination or retaliation; they simply illustrate AISD's attempts

---

[4] Strife also alleges that AISD's "disparate treatment" of "service animals" evinces pretext. Specifically, she claims that while AISD delayed her accommodation, the district allowed able-bodied employees to have non-service dogs. But reviewing her summary judgment evidence reveals that she is referencing police department K-9 dogs that serve the school district. Simply stated, K-9 dog handlers are not "legally-sufficient comparator[s]" for discrimination claims brought by individuals requesting service dogs. *Cf. Alexander v. Brookhaven Sch. Dist.*, 428 F. App'x 303, 309 (5th Cir. 2011) (per curiam).

to confirm, as part of the interactive process, whether alternative accommodations existed. And to the extent that Strife believes that the district was incorrect or mistaken in requesting additional information, the ADA retaliation inquiry lies in identifying "discriminatory motive," not simply "erroneous decision[making]." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). The district court correctly granted summary judgment on Strife's retaliation claim.

## D.    Interference

Finally, Strife alleges that the district's actions violated the ADA's anti-interference provision. While this court has not yet articulated a test for evaluating ADA interference claims, the cause's requirements can be derived from the statutory text. The provision reads:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b). Distilled, the statute has at least three requirements: (1) coercion, intimidation, threats, or interference toward an individual, (2) on the basis of that individual's exercise or enjoyment, or having exercised or enjoyed, or aiding or encouraging others in exercising or enjoying, (3) any right protected under the ADA.[5] The Seventh Circuit has added a fourth

---

[5] In resolving the interference claim, the district court stated that "an element of an interference claim is that the defendant 'interfered on account of [the plaintiff's] protected activity.'" Order at 16 (original modification) (quoting *Huber v. Blue Cross & Blue Shield of Fla., Inc.*, No. CV 20-3059, 2022 WL 1528564, at *5 (E.D. La. May 13, 2022)). That articulation misses the mark, as interference can exist without the exercise of

element requiring that the interfering employer be "motivated by an intent to discriminate." *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 551 (7th Cir. 2017). And the Ninth and D.C. Circuits have added a limiting principle: the anti-interference provision "cannot be so broad as to prohibit 'any action whatsoever [that] in any way hinders a member of a protected class.'" *Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003) (quoting *Mich. Prot. & Advoc. Serv. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994)); *see also Menoken v. Dhillon*, 975 F.3d 1, 11 (D.C. Cir. 2020) (agreeing with *Brown*).

Regardless of the specific elements required, Strife's claim cannot survive summary judgment. In her opposition to AISD's motion for summary judgment, Strife relegated her argument to a single footnote detailing that the claim was "distinct from her ADA retaliation claim" yet "predicated on the same underlying facts." As the district court explained, Strife failed "to point to specific evidence in the record that shows how AISD interfered with her rights." Order at 16–17 (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

And if Strife's pleadings were sufficient, our caselaw makes clear that accommodations are secured through an interactive process with bilateral discussion between employer and employee. *Loulseged*, 178 F.3d at 736. Record evidence demonstrates that, contrary to Strife's allegations, the district had a valid, non-discriminatory reason for not immediately granting her requested accommodation. It would accordingly be difficult to construe AISD's continued engagement in an interactive process designed to secure

---

protected activity (or without an employer response that is "on account of" protected activity). For example, an employer that instructs employees to complete a particular form to request accommodations, and then makes that form completely inaccessible, interferes with an employee's "exercise or enjoyment of" a right to a reasonable accommodation despite not acing "on account of" a protected action.

No. 24-20269

Strife's requested accommodation as "interference" in violation of the ADA. The district court correctly granted summary judgment on this claim.

**IV.**

For the reasons discussed above, we REVERSE the dismissal of Strife's failure-to-accommodate claim, AFFIRM the dismissal of Strife's hostile work environment claim, and AFFIRM the grant of summary judgment, in AISD's favor, on Strife's disability discrimination, retaliation, and interference claims. The case is REMANDED to the district court for further proceedings consistent with this opinion.