Filed 09/24/25

VERMONT SUPERIOR COURT
Orange Unit
5 Court Street
Chelsea VT 05038
802-685-4610
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-00561

| Aurora Berger v. Sarah Root et al |
|---|

## ENTRY REGARDING MOTION

Title:      Motion for Summary Judgment  (Motion: 9)
Filer:      Pietro J. Lynn
Filed Date: May 22, 2025

The motion is GRANTED IN PART and DENIED IN PART.

### Decision on Defendants' Motion for Summary Judgment

Plaintiff, Aurora Berger, began working in 2019 at the Newton School (kindergarten through 8th grade), which is part of the Strafford School District and White River Valley Supervisory Union, as a paraprofessional 4-hours per day. Ms. Berger suffers from Marfan Syndrome, which substantially disables her. Nevertheless, in her part-time paraprofessional role, she required no workplace accommodations. For the 2021–22 schoolyear, she was also hired to be Newton's part-time art teacher. At the time, she was not licensed to teach, so superintendent Mr. Jamie Kinnarney obtained a 2-year provisional license for her. If Ms. Berger was not fully licensed at the end of this period, Mr. Kinnarney would need to have secured a 1-year extension of her provisional license.[1] In August 2021, in anticipation of the obligations of performing both roles, Ms. Berger started the process of requesting accommodations. The School granted the requested accommodations, which were later found to be deficient for her needs and were modified accordingly. By the end of November 2021, she had mutually agreed upon accommodations in place that allowed her to perform successfully.

Ms. Berger quit the Newton paraprofessional role at the end of that schoolyear and, in the ensuing 2022–23 schoolyear, she served as the part-time art teacher at both Newton and the Mountain School of Milton Academy. The School offered Ms. Berger a contract to remain

---

[1] There appears to be no dispute that an extension of a provisional license must be sought by the superintendent. Ms. Berger could not have done that on her own.

Newton's art teacher for the 2023–24 schoolyear, which she accepted. Ms. Berger claims that there was an understanding between her and Mr. Kinnarney that he would obtain the 1-year extension of her provisional license to ensure that she would be able to teach during the 2023–24 schoolyear, her third teaching, because full licensure, which she was diligently pursuing, was unlikely to come through in time.

Towards the end of the 2022–23 schoolyear, before Mr. Kinnarney had sought the 1-year extension, an allegation of inappropriate conduct by Ms. Berger with a student from the Mountain School arose. The allegation of misconduct is unclear from the record but it appears to be related, in some way, to Ms. Berger's personally operated website, which was at the time (and remains) publicly accessible and includes some nude but nonsexual portraiture of herself. There has never been any determination by anyone that Ms. Berger engaged in any sort of misconduct with a student or anyone else. According to Ms. Berger, however, Mr. Kinnarney reacted extremely poorly to her website (that it included nude portraiture) once he became aware of it, he placed her on administrative leave for the balance of the year. She was pressured to resign but did not. Mr. Kinnarney then refused to seek the extension of her provisional license, and her employment promptly ended for lack of any license.

In this case, Ms. Berger claims that Defendants (a) discriminated against her on the basis of disability in violation of Vermont's Fair Employment Practices Act (VFEPA), 21 V.S.A. §§ 495–496a, by unreasonably delaying the provision of accommodations at the beginning of the 2021–22 schoolyear; (b) retaliated against her in violation of VFEPA for having sought those accommodations by not taking anticipated steps in June 2023 to obtain the extension of her provisional license; and (c) retaliated against her in violation of her right to free expression (her personal website) in violation of the Vermont Constitution ch. I, art. 13.[2] Defendants have filed a motion for summary judgment addressing each claim. In sum, they argue that there was no unreasonable delay in granting accommodations, the record cannot support any inference that the issue of accommodations had any causal connection to how Ms. Berger's employment ended, and Mr. Berger's website had nothing whatsoever to do with her lack of a teaching license and inability to continue teaching in the 2023–24 schoolyear.

---

[2] Defendants include the White River Valley Supervisory Union, the Strafford School District, the Strafford School Board, Superintendent Kinnarney, Ms. Tracy Thompson, the Newton principal during the underlying events, and the chair of the School Board at the time. There is no need to distinguish among the defendants for purposes of their summary judgment motion. For ease of reference, the court refers to them collectively as Defendants.

## I. Procedural standard

Summary judgment procedure is "an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c), shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. V.R.C.P. 56(a). Summary judgment will be granted if, after adequate time for discovery, a party fails to make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial. *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994). The court derives the undisputed facts from the parties' statements of fact and the supporting documents. *Boulton v. CLD Consulting Engineers, Inc.*, 2003 VT 72, ¶ 29. A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts, affidavits, or other evidence to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628 (1991). Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10.

## II. Disability discrimination—delay in providing accommodations

The VFEPA bars employers from harassing or discriminating against any employee who is a "qualified individual with a disability." 21 V.S.A. § 495(a)(1). A qualified individual with a disability is a person with "a disability who is capable of performing the essential functions of the job or jobs for which the individual is being considered with reasonable accommodation to the disability." 21 V.S.A. § 495d(6)(A). The basic elements of a failure-to-accommodate claim are as follows: "(1) [the employee] was an individual who has a disability within the meaning of [VFEPA]; (2) [the employer] had notice of [the] disability; (3) with reasonable accommodations, [the employee] could have performed the essential functions of the position; and (4) [the employer] refused to make such accommodations." *Gates v. Mack Molding Company, Inc.*, 2022 VT 24, ¶ 16, 216 Vt. 379. "Once plaintiff makes out a prima facie case, the burden shifts to the employer to show that any reasonable accommodation would have been impossible, would have substantially altered the nature of the job, or would have been unduly burdensome." *Id.*

In this case, there is no dispute as to the first 3 elements or that Defendants in fact granted the accommodations Ms. Berger sought. However, she claims that Defendants made the process

take far too long. "An unreasonable delay in providing an accommodation for an employee's known disability can amount to a failure to accommodate his disability." *McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020). "Whether a particular delay is unreasonable turns on the totality of the circumstances, including, but not limited to, such factors as the employer's good faith in attempting to accommodate the disability, the length of the delay, the reasons for the delay, the nature, complexity, and burden of the accommodation requested, and whether the employer offered alternative accommodations." 3 Americans with Disab.: Pract. & Compliance Manual § 8:49.

The facts material to this claim are not genuinely disputed. When Ms. Berger first got the art teacher position at Newton, she reached out to the school's human resources division to inquire about the accommodations process. She was given the forms to fill out, which included a doctor's certification. She and her physician filled out the paperwork and returned it on August 30, 2021.

On the form, Ms. Berger requested the following accommodations:

- Scheduled breaks (10-15 min per each 4 hours)
- Limited physical exertion related to teaching and para duties, (i.e., outdoor education classes, forest classroom, hike for hunger), this excludes normal classes being held outdoors to accommodate for Covid-19 or other weather-related reasons.

In response to how the accommodations would assist her, she wrote:

> Having breaks and not having to strain my body in extreme environments (heat, cold, walking on rough terrain) will enable me not to over-stress my body and help prevent further damage and chronic pain. Without time to rest I will likely be unable to work full time as in the past this has triggered flairs of migraines, pain, and fatigue.

On the form for suggestions as to possible accommodations, her physician also wrote, "Scheduled breaks every 4 hours. Limit unnecessary physical activity."

The school promptly approved the requested accommodations on September 6th, as follows: "Regularly scheduled breaks every 4 hours—limit unnecessary physical activity (undue strain in extreme environments, such as heat, cold or walking on rough terrain). Provide downtime in order . . . for body to rest and prevent triggers."

The vagueness of the requested and granted accommodations in relation to Ms. Berger's actual needs and the school's scheduling needs (particularly as to outdoor activities) led to numerous

discussions between Ms. Berger and the School's administration in the fall of 2021. Ms. Berger states that she "didn't have a single problem with this until the end of October." Berger Depo. at 143. By then, however, the weather had become colder, too cold for Ms. Berger.

On November 10, Ms. Berger indicated that she had spoken with her doctor, and her doctor would be writing a new "accommodations letter," which Ms. Berger would share "by the beginning of next week." Ex. L. The doctor's letter (dated November 15th) indicates that Ms. Berger should not work outdoors for longer than 30 minutes when the temperature is below 40 degrees. The school received the letter on November 16th. *Id.* Following its Thanksgiving Break, the school approved the newly requested accommodations on November 30th. These new accommodations included the requested 40-degree provision, following the school's Thanksgiving break. As far as the record before the Court shows, there were never any issues as to workplace accommodations thereafter.[3]

The record amply demonstrates that agents of the school engaged with Ms. Berger frequently and in good faith as to her need for accommodations, which were complicated by their evolving nature, an initial lack of clear communication about the impact of cold weather, and the school's complicated scheduling needs. There was no palpable issue until late October, when the weather had become too cold for Ms. Berger. Nevertheless, Ms. Berger provided an agreed upon doctor's note as to her specific time and temperature limitation on November 16 and, considering the intervening holiday vacation, the modified accommodations were approved within days on November 30th.

Typically, the sort of delay in providing an accommodation that may give rise to liability is the kind that demonstrates the employer's "lack of good faith in the interactive process," protracted refusal to engage, or protracted refusal to provide warranted and readily available accommodations. *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 246 (5th Cir. 2025) (citation omitted). Any "delay" in

---

[3] Though Ms. Berger was successfully accommodated by the end of November 2021, she repeatedly asserts that the accommodations process was so taxing that it somehow caused her to stop working as a paraprofessional at the end of the 2021–22 schoolyear. The allegation is highly conclusory—there is no explanation as to why, with successful accommodations in place at the beginning of the schoolyear, Ms. Berger would feel the need to quit one of her roles at the end of the schoolyear. As such, the Court is not bound to accept such bald conclusory assertions on summary judgment. See *In re Shenandoah, LLC*, 2011 VT 68, ¶ 17 ("It is well-established that 'ultimate or conclusory facts and conclusions of law . . . cannot be utilized on a summary-judgment motion.'") (quoting 10B C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2738, at 346–56 (3d ed. 1998)); see also *Lawson v. Halpern-Reiss*, 2019 VT 38, ¶ 22 (noting that a "vague allegation that facts are contested, without more, is insufficient to withstand summary judgment.").

this case was minimal and the record plainly shows that the parties repeatedly engaged in good faith to iron out the specifics of Ms. Berger's needed accommodations and provide them. No doubt, Ms. Berger thinks the process could have gone more smoothly. But the record reveals nothing that could lead to liability for delay in providing the accommodations that in fact were provided, and Ms. Berger has come forward with no authority that remotely might support liability in the circumstances of this case. There is no genuine issue for a factfinder to resolve as to this claim. Defendants are entitled to summary judgment on this claim, and this portion of their motion is **Granted**.

III. *Disability discrimination—retaliation*

After Ms. Berger received her accommodations at the end of November 2021, she successfully taught art for the balance of that schoolyear and the next until the events of June 2023. It was at that point (the details of which are more fully addressed in the next section) that Mr. Kinnarney determined not to seek a 1-year extension of Ms. Berger's provisional license even though she had been hired to remain Newton's art teacher in the 2023–24 schoolyear but did not have time to become fully licensed first. Mr. Kinnarney's decision effectively ended Ms. Berger's employment at the Newton school. Ms. Berger claims that Mr. Kinnarney's decision to not seek the extension was retaliation in violation of 21 V.S.A. § 495(a)(8) in response to her accommodation requests at the beginning of the 2021–22 schoolyear.

The Vermont Supreme Court has described the elements of such a retaliation claim as follows:

> To establish a prima facie case of retaliatory discrimination under FEPA, the plaintiff must show that (1) she engaged in a protected activity; (2) her employer was aware of that activity; (3) she suffered adverse employment decisions; and (4) there was a causal connection between the protected activity and the adverse employment action. If the plaintiff establishes a prima facie case, the burden shifts to the defendant-employer to articulate some legitimate nondiscriminatory reason for the alleged retaliation. If the defendant carries this burden of production, the plaintiff must then demonstrate that the defendant's reasons are pretext for discriminatory retaliation

*Robertson v. Mylan Laboratories, Inc.*, 2004 VT 15, ¶ 42 (citations omitted).

For summary judgment purposes, there is no dispute that the record satisfies the first 3 elements. In particular, Ms. Berger requested accommodations, Defendants knew this (and granted them as requested), and Mr. Kinnarney subsequently determined that he would not to seek a 1-year extension of Ms. Berger's provisional teaching license, dooming her employment at Newton. Defendants argue that the record as a matter of law cannot permit any reasonable inference that the accommodations process that concluded in November 2021 had any causal connection to how Ms. Berger's employment ended in June 2023.

The events of June 2023, leading to Ms. Berger's lack of licensure and the end of her employment are deeply contested. However, those facts all relate exclusively to Defendants' awareness of Ms. Berger's website, disapproval of the content on that website, the attempt at pressuring her into resigning, the decision to not seek an extension of her provisional license, and the fact that the timeline for full licensure was not on track to ensure that she would be fully licensed in time for the 2023–24 schoolyear. Ms. Berger points to nothing, direct or circumstantial, indicating in any way that the decision to not seek the extension of her provisional license may have had a retaliatory motive due to the accommodations process that successfully concluded in November 2021. Rather, the only fair inference that the record supports is that once that accommodations process concluded, there was no further issue as to her accommodations or the process that led to them, much less any sort of disability-related animus that may have bubbled up over a year and a half later.

Even when the chronology of events is suspicious, temporal proximity is typically insufficient on its own to make out a prima facie case of causation. See *Hammond v. University of Vermont Medical Center*, 2023 VT 31, ¶ 42, 218 Vt. 250; *Robertson v. Mylan Laboratories, Inc.*, 2004 VT 15, ¶ 47, 176 Vt. 356. "The mere fact that one event preceded another does nothing to prove that the first event caused the second." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). Here, the timing of events is not suspicious, and Ms. Berger has come forward with no other evidence of retaliation in violation of 21 V.S.A. § 495(a)(8). Defendants are entitled to summary judgment on this claim, and this portion of their motion is **Granted.**

IV.     *Article 13 free speech violation*

Defendants also seek summary judgment on Ms. Berger's claim that Defendants effectively terminated her employment by not seeking the 1-year extension of her provisional license in

response to her protected free speech from her website in violation of the Vermont Constitution, ch. I, art. 13. Defendants contend that the website had nothing whatsoever to do with the end of her employment at Newton. In their view, Mr. Kinnarney had no duty to seek an extension of her provisional license. This decision did not to seek the provisional license did not, in and of itself, terminate Ms. Berger's employment. It ended because she had no ability to teach without a provisional license or full licensure, and she had neither when it mattered. This, in turn, nullified Ms. Berger's contract for the 2023–24 schoolyear and had nothing to do with her website.

The parties agree that the *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), framework applies to this case. As one treatise summarizes:

> [I]n *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, the Supreme Court held that plaintiffs claiming . . . that their employer had violated their First Amendment rights can shift the burden of persuasion to the employer by showing (1) that plaintiffs engaged in constitutionally protected speech, conduct, or associations, or the employer thought that they did so, (2) their employer took adverse employment action against them, and (3) plaintiff's actions (actual or perceived) were a "substantial" or "motivating factor" for the adverse action. The defendant can avoid liability only by proving, by a preponderance of the evidence, that it would have taken the same action even absent the unconstitutional motivation. In order to succeed with its defense, defendant must show that the record "would compel a reasonable jury to find that the adverse action would have occurred anyway, not merely that such action would have been warranted anyway." Plaintiff can avoid summary judgment for the defendant by demonstrating that there is a genuine issue of material fact on the question of causation.

2 Employment Discrimination Law § 11:7 (3rd ed.). There is no dispute for summary judgment purposes that the first two elements are satisfied.

In particular, as to the first element: "To be protected, the speech must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Waters v. Churchill*, 511 U.S. 661, 668 (1994). The speech at issue here is a website that Ms. Berger privately maintains. It features her artwork, which includes some nonsexual but nude photographs of herself. She describes her artwork, or some of it, as expressions related to her disability and as commentary on ableism (discrimination against disabled persons). The website is publicly accessible. There is no

serious contention that the website does not address matters of public concern or for any other reason is not constitutionally protected speech in this context.

The dispute lies in whether the website had anything to do with Mr. Kinnarney's decision to not seek a 1-year extension of Mr. Berger's provisional license, which ended her employment at Newton. On this point, it is sufficient for summary judgment purposes to note that there is appreciable evidence in the record that could support a determination by a factfinder that it was the driving motivation for it.

Ms. Berger's website existed, was publicly available. It was noted on her resumé when she was hired at Newton, and it was actively available on the internet at all relevant times. Nevertheless, school officials apparently were unaware of it until the beginning of June 2023 when an amorphous allegation arose from the Mountain School that Ms. Berger may have shown her website or nude photographs of herself to a student at that school. Mr. Kinnarney immediately placed her on administrative leave, writing, in a letter dated June 5, 2023:

> It has come to my attention through direct contact with the Agency of Education Investigative Unit that their office and the Department of Children's and Families have received a complaint about an alleged inappropriate set of interactions that occurred between yourself and students during your role as an art educator at the Mountain School of Milton Academy. In addition, it was brought to my attention that there are nude photos posted via the internet that any/all students could readily access.

> Therefore, this letter shall serve as formal notice that you are being placed on paid administrative leave pending our investigation into the aforementioned concerns. While you are on paid administrative leave, you are directed to refrain from contacting any students, staff or community members regarding the complaints against you. Additionally, while you are on leave it is my expectation that you will not be engaging in any work on behalf of the district or supervisory union.

At a subsequent meeting on June 12th, Ms. Berger protested that she had not shown nude photos to any students or done anything wrong. Obviously unpersuaded, school officials are alleged to have pressured her to resign rather than face termination. At a subsequent meeting on June 22d, Mr. Kinnarney allegedly expressed that Ms. Berger had poor professional boundaries and morals. According to Ms. Berger, he said, "The fact that you don't think you did anything wrong makes me even more convinced that you need to leave this job." He questioned whether her artwork really

was "artistic," and he said, "If my 14-year-old daughter came home and told me her art teacher had shown her nude photographs on her website, I would be upset."

No formal investigations ever were untaken by anyone, including Mr. Kinnarney, and no one ever made any formal determination that Ms. Berger ever had done anything wrong. Yet she remained on administrative leave for the balance of the schoolyear, and Mr. Kinnarney did not seek a 1-year extension of her provisional license.

The timing of the website controversy coincided almost perfectly with the licensing issue. There was an expectation that Ms. Berger would have submitted her materials in support of full licensure on or around June 1st. She was ready to do so no later than June 5th, but could not because she had lost access to them (on the school's server) when she was placed on administrative leave. Even if she had submitted everything on June 1st, there is no reasonable prospect that her license could have come through in time to start teaching in the 2023–24 schoolyear.

Based on this narrative, which derives from the record before the Court and reasonable inference drawn in Ms. Berger's favor, a factfinder could infer that Mr. Kinnarney did not seek a provisional license for Ms. Berger to ensure that she was unlicensed and could no longer teach at Newton. There is substantial evidence in the record that provisional licenses and 1-year extensions were routinely dealt with flexibly for numerous other teachers in support of their ability to teach at Newton, and that the State licensing authority routinely granted such requests.

To be sure, Defendants contest this narrative, particularly as to expectations of Ms. Berger in terms of seeking full licensure, whether there ever was a reasonable expectation that Mr. Kinnarney would seek the 1-year provisional extension, or whether there were extenuating circumstances that would permit such an extension. These are disputed matters and would be improper for the Court to resolve through this motion. *Booska v. Hubbard Ins. Agency, Inc.*, 160 Vt. 305, 309 (1993) ("It is not the function of the trial court, however, to find facts on a motion for summary judgment, even if the record appears to lean strongly in one direction.").

The parties' competing narratives as to why Mr. Kinnarney did not seek the extension cannot be resolved on summary judgment, which must be denied as to this claim, and this portion of Defendant's Motion is **Denied.**

## ORDER

For the foregoing reasons, Defendants' summary judgment motion is **Granted** as to the disability related claims; it is **Denied** as to the free speech and resulting improper termination claim.

Electronically signed on 9/24/2025 2:42 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge